**Jacqueline L. CHAUVIN, Movant,**

v.

**KENTUCKY BAR ASSOCIATION,
Respondent.**

No. 2009–SC–000404–KB.

Supreme Court of Kentucky.

Oct. 1, 2009.

## *OPINION AND ORDER*

Jacqueline L. Chauvin, whose KBA member number is 85883 and whose bar roster address is The Willows of Plainview, 10070 Willowbrook Circle, Louisville, Kentucky, 40223, admits that she is guilty of committing all charges of misconduct alleged by the Kentucky Bar Association (KBA) and requests that this Court impose a five-year suspension from the practice of law in order to resolve her charges as set forth in KBA Files 15209, 15362, 15780, 15016, and 16702. The KBA agrees that this is an appropriate discipline and recommends that this Court grant Chauvin's request. Having reviewed the record, this Court grants Chauvin's motion, orders that she be suspended from the practice of law in this Commonwealth for five years, that she enter a Supervision Agreement with the Kentucky Lawyers Assistance Program for five years, and that she pay back all unearned fees plus interest to her clients as set forth below within two years of the date of this Opinion and Order.

Chauvin was admitted to practice law in this Commonwealth on October 13, 1995. In January 2006, Chauvin began demonstrating misconduct in her representation of clients, which resulted in the KBA opening five different files and charging Chauvin with a total of twenty-three counts of violations of the Rules of Professional Conduct. The facts underlying these charges are explained below.

### KBA File 15209

█ In January 2006, Helen Palmer hired Chauvin to represent her in a divorce proceeding, and without entering into a written fee agreement, Palmer gave Chauvin $20,000 for her representation. During the next several months, Palmer contacted Chauvin on numerous occasions requesting that Chauvin give her statements regarding the details of the work being performed and the status of her case. Chauvin neither returned Palmer's phone calls nor provided her with any accounting statements. Chauvin also did not inform Palmer that on August 1, 2006, the court entered an order setting a case management conference for October 25, 2006.

Due to this failure to communicate, Palmer sent a letter to Chauvin on October 7, 2006, terminating her attorney/client relationship with Chauvin. Despite Palmer's request that Chauvin forward an accounting of the $20,000 and her case file to her new attorney, Chauvin never complied with either request. Subsequently, the court entered an order of substitution of counsel on October 17, 2006.

On October 16, 2008, the KBA issued a six-count charge against Chauvin based on her misconduct in representing Palmer. These charges included violating SCR 3.130–1.3 for failing to act with due diligence, SCR 3.130–1.4(a) and (b) for failing to communicate with her client, SCR

3.130–1.5(a) for charging an unreasonable fee, SCR 3.130–1.16(d) for failing to return an unearned fee to her client upon termination of representation,[1] SCR 3.130–3.2 for failing to expedite the divorce action, and SCR 3.130–8.3(c)[2] for engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation. In her motion to this Court, Chauvin admits that she is guilty of violating these rules as set forth in KBA File 15209 and acknowledges that Palmer is entitled to a reimbursement of $3,970.

### KBA File 15362

■ In the spring of 2006, Chauvin agreed to represent David Patterson in his appeal of a Jefferson Family Court Judgment. As Patterson's legal counsel, Chauvin was required to file her brief with the Kentucky Court of Appeals by May 9, 2006. However, Chauvin failed to file a brief by this date. Thereafter, on August 16, 2006, the Court of Appeals entered an order requiring Chauvin to file a status report to inform the court whether she had abandoned her appeal. Chauvin never responded to this order. The Court of Appeals entered two more orders—a show cause order on October 30, 2006, and an order requiring Chauvin to pay a $200 fine on December 14, 2006—to which Chauvin failed to respond. Subsequently, on April 9, 2007, the Court of Appeals entered a fourth order requiring Chauvin to appear on May 9, 2007, to show cause as to why she should not be held in contempt for her repeated failure to comply with court orders, why an additional $500 fine should not be imposed, and why her actions

should not be reported to the Inquiry Commission. Chauvin appeared before the court with counsel on May 9, 2007, but did not offer a satisfactory explanation as to why she had failed to comply with court orders. Thus, on May 18, 2007, the Court of Appeals entered an Opinion finding that Chauvin was in contempt of court, imposing a $200 penalty for such contempt, and imposing an additional $500 fine for Chauvin's failure to comply with numerous court orders. Chauvin complied with these orders, submitting the $200 fine on May 21, 2007, and the $500 fine on May 25, 2007, to the Clerk of the Court of Appeals.

After receiving the Court of Appeals' Opinion, the Inquiry Commission sent two separate letters to Chauvin, one on June 7, 2007, and one on June 25, 2007, requesting that she respond to the allegations of professional misconduct relating to her representation of David Patterson. Chauvin did not respond to either of these letters. Thereafter, on December 2, 2008, the Inquiry Commission issued a four-count charge against Chauvin, alleging that she violated SCR 3.130–1.3 for being less than diligent in her representation of Patterson, SCR 3.130–3.2 for failing to expedite her client's appeal, SCR 3.130–3.4(c) for disobeying the rules of a tribunal, and SCR 3.130–8.1(b) for failing to respond to a disciplinary authority. Chauvin now acknowledges that she violated the above stated rules of professional conduct in her failure to adequately represent Patterson in his appeal.

---

1. In accounting for the portion of the fee that should be returned to Palmer, Chauvin explains that she submitted several pleadings on behalf of Palmer, which is verified by the court record, and worked a total of 91.6 hours on Palmer's divorce case. Chauvin states that at $175 per hour, she was entitled to $16,030, and acknowledges that Palmer is

due a reimbursement of $3,970. This accounting is not disputed by the KBA.

2. Effective July 15, 2009, SCR 3.130–8.3 was renumbered as SCR 3.130–8.4. The language of this rule did not change. This renumbering will be reflected throughout this Opinion and Order.

## KBA File 15780

In June 2006, Robert Hallenberg began trying to contact Chauvin to discuss the status of the dissolution proceeding between John O'Neil, one of Chauvin's clients, and Cathryn O'Neil. John O'Neil passed away in 2005, and while the Executor of Mr. O'Neil's estate hired Robert Hallenberg to generally represent his estate, the Executor allowed Chauvin to continue representing Mr. O'Neil in the post dissolution of marriage proceedings regarding the division of property. In December 2006, despite the fact that Hallenberg had still been unable to contact Chauvin, Chauvin unilaterally made a motion for a trial date in the dissolution proceeding, which the court granted on January 9, 2007. After the Domestic Relations Commissioner filed his report and recommendation on January 16, 2007, Hallenberg and Chauvin finally contacted each other and discussed what Mr. O'Neil's response should be to the commissioner's recommendation. Following two hearings regarding the exceptions to the recommendation, Hallenberg again began contacting Chauvin to request information, but she failed to respond.

On July 10, 2007, the Jefferson Family Court delivered its Findings of Fact and Conclusions of Law to Hallenberg. Hallenberg continued trying to contact Chauvin to discuss the court's findings, but she failed to return any of his calls. Thereafter, one of Hallenberg's partners filed a motion to alter, amend, or vacate the court's findings, a copy of which was mailed to Chauvin. Having still received no response from Chauvin, on August 7, 2007, the Executor of Mr. O'Neil's estate fired Chauvin and requested that she return all of Mr. O'Neil's files, which Chauvin failed to do. Subsequently, on October 12, 2007, Hallenberg filed a bar complaint against Chauvin. On February 15, 2008, the Jefferson County Deputy Sheriff served a copy of this complaint on Chauvin, which advised her that a failure to respond to the complaint could subject her to a further charge of misconduct pursuant to SCR 3.130–8.1. After the Inquiry Commission received no response, the sheriff served a reminder letter on Chauvin, to which she again failed to respond.

On March 9, 2009, the Inquiry Commission issued a three-count charge based on Chauvin's misconduct in representing Mr. O'Neil. The charge alleged that Chauvin violated SCR 3.130–1.4(a) and (b) by failing to communicate with Hallenberg, SCR 3.130–1.16(d) by failing to return Mr. O'Neil's file upon termination of the attorney/client relationship, and SCR 3.130–8.1(b) by failing to respond to a disciplinary authority. In her motion, Chauvin admits that her misconduct in representing Mr. O'Neil and later his executor violated the above referenced rules of professional conduct.

## KBA File 15016

In August 2006, Geraldine Wood paid Chauvin $500 to represent her in a divorce proceeding, and paid her another $1,000 in September 2006. After Ms. Wood's then husband filed a petition for dissolution, Chauvin filed a response and counter petition on behalf of Ms. Wood on September 21, 2006. On October 31, 2006, Mr. Wood's attorney sent Chauvin a settlement offer, which was to expire if not accepted in writing on or before November 14, 2006. Chauvin never informed Ms. Wood of this settlement offer, and despite Ms. Wood's attempts to contact Chauvin during this time, Chauvin never returned her phone calls or emails. On December 12, 2006, Ms. Wood sent a letter to Chauvin terminating their attorney/client relationship and requesting a refund of any

unearned fees and her case file. Chauvin never responded to this letter.

On January 30, 2007, Ms. Wood filed a bar complaint against Chauvin. Chauvin neither responded to this bar complaint nor to the reminder letter served on Chauvin via certified mail. Subsequently, on September 10, 2007, the Inquiry Commission issued a five-count charge against Chauvin, alleging that she violated SCR 3.130–1.3 for failing to act with due diligence in her representation of Ms. Wood, SCR 3.130–1.4(a) and (b) for failing to communicate properly with her client, SCR 3.130–1.16(d) for failing to refund an unearned fee upon termination of her representation, SCR 3.130–3.2 for failing to expedite the dissolution of marriage on behalf of her client, and SCR 3.130–8.1(b) for failing to respond to a disciplinary authority. In addition to admitting her guilt in violating these aforementioned rules, Chauvin also acknowledges that Ms. Wood is entitled to a complete reimbursement of the $1,500 advance payment.

## KBA File 16702

■ In the fall of 2006, Leslie Brook Singleton paid Chauvin $10,000 to represent her in a divorce proceeding. During the course of Chauvin's representation, Singleton began living with Chauvin in order to recuperate after having medical treatment. Thereafter, in October 2006, Chauvin used Singleton's credit card to buy approximately $1,100 worth of various items and withdrew approximately $1,200 of Singleton's money at three different ATM machines. Although it is not disputed that these purchases and withdrawals were made with the knowledge, consent, and participation of Singleton, Chauvin admits that it was improper to receive such assistance during the period of her legal representation of Singleton.

In April 2007, Chauvin informed Singleton that due to personal reasons, she was no longer going to practice law. At this time, Chauvin did not provide a complete accounting to Singleton regarding any unearned fees. After the termination of their attorney/client relationship, in March 2008, Chauvin again used Singleton's credit card, again with Singleton's knowledge and consent, to purchase approximately $1,435 worth of various items for Chauvin's personal use. Chauvin admits that to the extent that Singleton has not been reimbursed for these expenses, Singleton is entitled to a reimbursement.

On July 9, 2008, Singleton filed a bar complaint against Chauvin. On August 26, 2008, a Jefferson County Deputy Sheriff served the complaint on Chauvin, and after receiving no response, served a reminder letter on October 2, 2008. Chauvin also failed to respond to this reminder letter. On March 9, 2009, the Inquiry Commission issued a five-count charge against Chauvin, alleging that she violated SCR 3.130–1.3 for failing to diligently represent Singleton, SCR 3.130–1.15(d) for failing to return money that belonged to her client, SCR 3.130–8.4(b) and (c) for engaging in a criminal act—misappropriating her client's property—that reflects poorly on a lawyer's honesty and trustworthiness, SCR 3.130–1.16(d) for failing to return an unearned fee upon the termination of the attorney/client relationship, and SCR 3.130–8.1(b) for failing to respond to a disciplinary authority. Chauvin admits in this motion that she is guilty of these violations as set forth in KBA File 16702 and that Singleton is entitled to a reimbursement of $1,435.

In addition to admitting that she is guilty of all the charges set forth in these KBA files, Chauvin explains in her motion that she has a mental health condition that affected her judgment and ability to prac-

tice law during her representation of Helen Palmer, David Patterson, the Estate of John O'Neil, Geraldine Wood, and Leslie Brook Singleton. Chauvin also acknowledges that her failure to respond to any of the bar complaints or the KBA's requests for information further complicated these disciplinary proceedings to the KBA's detriment. Chauvin's prior discipline includes a sixty-one day suspension from the practice of law entered on August 23, 2007, with thirty days to be served and thirty-one days probated under certain conditions. On August 28, 2007, the KBA objected to Chauvin's automatic reinstatement pursuant to SCR 3.510(2), and Chauvin has not since been reinstated to practice law in this Commonwealth.

In its motion, the KBA notes that pursuant to SCR 3.480(2) and its procedure in consensual discipline cases, it entered into sanction negotiations with Chauvin. The KBA explains that Chauvin's motion represents its negotiated sanction and acknowledges that both the KBA and the Chair of the Inquiry Commission approve of Chauvin's motion. Having reviewed these motions, this Court agrees that a five-year suspension from the practice of law with certain conditions is an appropriate sanction for Chauvin's misconduct. In the past, this Court has imposed a five-year suspension against attorneys who have engaged in similar misconduct. *KBA v. Hammond,* 241 S.W.3d 310 (Ky. 2007) (attorney suspended for five years for his failure to diligently represent six clients); *KBA v. Hall* 173 S.W.3d 621 (Ky. 2005) (attorney suspended for five years for his neglect of multiple clients' cases, retention of unearned fees and client property, and failure to respond to bar complaints). Therefore, it is hereby ORDERED that:

1. Jacqueline L. Chauvin is suspended from the practice of law in this Commonwealth for five years to run from the date of this Opinion and Order.

2. Jacqueline L. Chauvin is directed to enter into a Supervision Agreement with the Kentucky Lawyers Assistance Program for a total of five years.

3. Jacqueline L. Chauvin is directed to reimburse Helen Palmer the sum of $3,970, plus legal interest accumulating from October 7, 2006, and Geraldine Wood the sum of $1,500, plus legal interest accumulating from December 12, 2006. Chauvin is also ordered to reimburse Leslie Brook Singleton the sum of $1,435, plus legal interest accumulating from March 2008, to the extent that Singleton has not been previously reimbursed this amount by a third party on behalf of Chauvin. These reimbursements to Palmer, Wood, and Singleton must be paid within two years from the date of this Opinion and Order.

4. If Chauvin currently has any clients, pursuant to SCR 3.390, she is directed to notify all clients in writing within ten days from the entry of this Opinion and Order of her inability to represent them, and notify all courts in which she has matters pending of her suspension from the practice of law, and furnish copies of the notification letters to the Director of the KBA. Further, to the extent possible and necessary, Chauvin shall immediately cancel and cease any advertising activities in which she is engaged.

5. Pursuant to SCR 3.450, Chauvin is directed to pay all costs associated with this proceeding in the amount of $604.81, for which execution may

issue from this Court upon finality of this Opinion and Order.

All concur. VENTERS, J., not sitting.

ENTERED: October 1, 2009.

/s/ John D. Minton, Jr.
CHIEF JUSTICE