TO BE PUBLISHED

# Supreme Court of Kentucky

2025-SC-0082-KB

IN RE: DAVID CURLIN

IN SUPREME COURT

**OPINION AND ORDER**

This case is before the Court upon Judge David Curlin's Motion for Consensual Discipline. Judge Curlin currently sits on the bench for Henderson Family Court. His KBA number is 92885. The underlying misconduct largely occurred prior to his taking the bench. The Judicial Conduct Commission is holding its proceedings against Judge Curlin in abeyance pending resolution of these disciplinary proceedings. The discipline Judge Curlin has negotiated with the Kentucky Bar Association (KBA) is a one-year suspension of his law license, with ninety days to serve, retroactive to September 29, 2023, the balance to be probated for one year on condition that Judge Curlin not receive any further disciplinary charges and that he enters a Monitoring Agreement with KYLAP regarding his ADHD treatment.

On September 29, 2023, this Court entered an Order indefinitely suspending Judge Curlin from the practice of law due to his repeated failures to respond to multiple KBA complaints and charges, as well as the orders of this Court. *Kentucky Bar Ass'n v. Curlin*, No. 2023-SC-0084-KB, 2023 WL 6357675 (Ky. Sept. 29, 2023). On January 12, 2024, we set aside that order

and lifted the indefinite suspension. *Kentucky Bar Ass'n v. Curlin*, No. 2023-SC-0084-KB, 2024 WL 316518 (Ky. Jan. 12, 2024). For the following reasons, we approve the proposed sanction and order it imposed.

## I.     Standard of Review

This Court possesses exclusive authority to administer discipline to lawyers practicing within the Commonwealth. *Grigsby v. Kentucky Bar Ass'n,* 181 S.W.3d 40, 42 (Ky. 2005). "As to disciplinary matters, recommendations of the Bar Association Board of Governors are advisory in nature, and this Court makes independent review of the record and findings of fact." *Id.*

## II.    Underlying Charges

In all underlying cases Judge Curlin was acting as a private attorney, but we continue to refer to him by his appropriate title. The first disciplinary case is 22-DIS-0053. Judge Curlin concedes to violations of SCR 3.130(1.3),[1] 3.130(1.4)(a)(3),[2] 3.130(1.4)(a)(4),[3] and 3.130(8.1)(b).[4] Judge Curlin represented Amber Cox in a slip and fall case estimated to be worth approximately $10,000 in damages. Judge Curlin took this case in late 2019, obtained a medical

---

[1] "A lawyer shall act with reasonable diligence and promptness in representing a client."

[2] "A lawyer shall . . . keep the client reasonably informed about the status of the matter[.]"

[3] "A lawyer shall . . . promptly comply with reasonable requests for information[.]"

[4] "[A] lawyer . . . in connection with a disciplinary matter, shall not . . . fail to disclose a fact necessary to correct a misapprehension known by the person to have arisen in the matter, or knowingly fail to respond to a lawful demand for information from an admissions or disciplinary authority[.]"

authorization in January 2020 for Cox's medical records, and apparently had no further communication with her until December 2020, in spite of Cox's attempts to contact him. In December 2020, Judge Curlin told Cox he had engaged in preliminary negotiations with the potential defendant, a gas station and its owner, and had received a settlement offer of $2,000. Judge Curlin told Cox he estimated the settlement value of her case was a maximum of $5,000. Cox rejected the $2,000 settlement offer. Judge Curlin failed to file a complaint, and consequently the statute of limitations took effect on Cox's personal injury claim. Judge Curlin failed to communicate with Cox after December 2020 therefore, never informed her the statute of limitations had run.

Judge Curlin acknowledges his misconduct but offers in mitigation that this case occurred during the Covid-19 pandemic. During the pandemic, supply shortages of ADHD medication he had been prescribed occurred which resulted in Judge Curlin either having to take less medication than he would typically have taken or not taking any medication at all.

The next disciplinary case is 22-DIS-0138. Judge Curlin admits to violations of SCR 3.130(1.4)(a)(3) under Count II and 3.130(8.1)(b) under Count IV but requests dismissal of the charges for violation of SCR 3.130(1.3) under Count I and 3.130(1.4)(a)(4) under Count III. In a civil collection suit wherein the client, Chris Smithhart, was the tenant, Judge Curlin came into the case in March 2021, approximately seven months after the suit was filed. As to the conceded charges, under Count II Judge Curlin admits he failed to fully communicate with Smithhart regarding the upcoming trial date a mere eleven

3

days before trial began in March of 2022. He also admits Smithhart told him to file an appeal after the jury trial resulted in a $10,200 judgment against him. Judge Curlin failed to file the notice of appeal, and failed to inform Smithhart he would not file the notice of appeal until Smithhart had paid the balance of his attorney's fees. He also admits he did not initially respond to the bar complaint under Count IV.

As to Count I, Judge Curlin has submitted the AOC Case History Log and his own billing statements to Smithhart to show he was actively representing Smithhart. The billing statements show multiple entries of research and writing, as well as a few meetings with Smithhart, between March 2021 and August 2021. There are no billing statements for services between August 2021 and March 2022. The billing statements and AOC log support that Judge Curlin researched legal issues and filed a witness and exhibit list, an Answer and Counterclaim, and a Motion to Intervene between the months of March 2021 and July 2021. The AOC logs do not show any further activity from either party until March 2022, with the exception of the filing of an Amended Complaint in November 2021.

Count I charges Judge Curlin with "frequently did not return calls in response to messages Mr. Smithhart left on his answering machine[,]" and that "Mr. Smithhart did not feel prepared to go to trial and believed Respondent was not prepared either." Count III adopts and reiterates the same allegation. We conclude the record does support dismissal of Count I but not Count III. There is simply nothing to account for what happened, if anything, between

4

Smithhart and Judge Curlin between August 2021 and March 2022. It may be Smithhart sought information on his case during these months and Judge Curlin failed to respond. The case history log would not be evidence tending to prove or disprove of this allegation and, of course, neither would non-existent billing statements. Therefore, dismissal of Count III is not warranted at this time but dismissal of Count I is appropriate.

The next disciplinary case is 23-DIS-0052. Judge Curlin admits the charges for violation of SCR 3.130(1.4)(a)(3), 3.130(1.16)(d),[5] and 3.130(8.1)(b). Judge Curlin represented William Harris in a motor vehicle personal injury suit and a Veteran's Administration claim. Judge Curlin filed suit in the personal injury action in March 2022. He won election to the Henderson Family Court later that year and was sworn-in in January 2023. Judge Curlin failed to effectively terminate his representation of Harris by neglecting to turn over the case file. He failed to respond to communications from Harris and another attorney apparently working on Harris' behalf, after he assumed the bench. Judge Curlin also failed to close his PO Box for his private law practice. In May 2023, when notice was sent that Harris' personal injury suit was subject to dismissal for lack of prosecution, that notice went to Judge Curlin's PO Box. The suit was dismissed in August 2023.

---

[5] "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law."

As to the Veteran's Administration (V.A.) case, Judge Curlin's representation extended back to January 2020. Judge Curlin failed to execute and submit a power of attorney to the V.A. when he initially filed Harris' claim therefore notices regarding the case were sent directly to Harris. Judge Curlin admits during the three years of representation he only called the V.A. a few times to check the status of the claim, but otherwise did nothing else. He also failed to turn over the case file when he took the bench. He admits to failing to respond to the bar complaint against him.

The last disciplinary case is 23-DIS-0231. Judge Curlin admits the charges for violating SCR 3.130(1.4)(a)(4) and 3.130(8.1)(b). The charges stem from Judge Curlin's representation of Susan Loveless in late 2019 or early 2020. Judge Curlin admits that though a formal agreement to represent her was never signed, he did communicate with her in March 2020 that he would "get back with her" after initially reviewing her files and documentation regarding her potential claim. At an undisclosed point in time afterward, Loveless was able to speak with Judge Curlin in person and he once again told her he would get back to her about her case. Judge Curlin admits his communications with Loveless created an implied attorney-client relationship, and that he failed to communicate with Loveless regarding her claim. He also admits to not responding to the bar complaint.

In general, Judge Curlin asserts in mitigation that the onset of the Covid-19 pandemic resulted in a supply shortage of ADHD medications. This necessitated his rationing of his medications to a less-than-normal frequency,

6

or that for some periods of time he was unable to take his medication at all. Judge Curlin also states his failure to respond to the bar complaints and subsequent orders of this Court stemmed from his inability to understand the disciplinary process, his lack of knowledge of any other lawyer who had gone through the process who might advise him, and lack of knowledge that help was available.

### III.  Analysis

ADHD is certainly an "impairment" under SCR 3.900(1). Inability to take prescribed medication at normal frequency or altogether would also certainly exacerbate the condition. Nonetheless, we cannot help but note that Judge Curlin was able to successfully campaign for election to the judicial bench in 2023. He was obviously not severely impacted by the medication shortage. Neither do we credit the assertion that Judge Curlin's failure to respond to the bar complaints is excusable because he did not understand the disciplinary process. "An attorney's ignorance is not good cause" to excuse the failure to adhere to professional standards and Rules of the Supreme Court. *Kentucky Bar Ass'n v. Towles*, 786 S.W.2d 874, 875 (Ky. 1990). Having to undergo the disciplinary process may be a foreboding experience, but the process itself is not byzantine. Any lawyer, especially a sitting judge, can reasonably ascertain by perusal of the pertinent rules that he must participate in the disciplinary process and respond to complaints and charges filed against him. Additionally, there can be no doubt that Judge Curlin knew he had to respond to these charges once this Court ordered him to do so, yet and still he failed to respond.

The KBA, in its response to Judge Curlin's motion, asserts there is no prior case on-point for the underlying conduct here. But the three cases cited by Judge Curlin and the KBA are readily distinguishable. First, Judge Curlin cites only one case: *Hansen v. Kentucky Bar Ass'n*, 155 S.W.3d 721 (Ky. 2005). In *Hansen*, we issued a public reprimand to the Commonwealth's Attorney for Perry County based on conduct which occurred prior to his election. *Id.* at 721. The underlying charges were related to a failure to inform his clients of the statute of limitations regarding their personal injury claim for a motor vehicle accident that occurred in Tennessee and failure to inform his clients he was not licensed to practice in Tennessee. *Id.* at 722. He also failed to inform them he could not represent them after assuming office. *Id.* Although *Hansen* involved three charges, they all stemmed from one case whereas here we have multiple violations of multiple rules from four different cases. *Hansen* is not applicable.

The KBA cites, first, to *Kentucky Bar Ass'n v. Miniard*, 289 S.W.3d 191 (Ky. 2009). In that case we imposed a 61-day suspension for violation of SCR 3.130–8.1(b). *Id.* at 193. Once again, we have multiple violations of multiple rules not merely one violation of one rule. Moreover, Judge Curlin's failures to respond all occurred or continued into his tenure on the bench. *Miniard* is not applicable. Lastly, there is the case of *Kentucky Bar Ass'n v. Stith*, 627 S.W.3d 929 (Ky. 2021). In that case, we found Stith "guilty of violating SCR 3.130(1.1), SCR 3.130(1.3), SCR 3.130(1.4)(a)(3), and SCR 3.130(8.1)(b)." *Id.* at 930 (internal footnotes omitted). It is much more apposite in that regard but

8

remains distinguishable as there was only one charge for each rule violation rather than multiple charges for multiple rule violations, nor did it involve a judge.

Rather than relying on distinguishable cases, our own research reveals the cases of *Calmes v. Kentucky Bar Ass'n*, 686 S.W.3d 189, 192 (Ky. 2024) and *Kentucky Bar Ass'n v. Cook*, 281 S.W.3d 290, 292 (Ky. 2009), both of which involved multiple disciplinary cases and multiple rules violations. In *Calmes*, we imposed a thirty-day suspension probated for two years. *Calmes*, 686 S.W.3d at 192. In *Cook*, we imposed a two-year suspension with thirty days to serve, and the remainder probated. *Cook*, 281 S.W.3d at 292. There is also the case of *Kentucky Bar Ass'n v. Miranda*, 680 S.W.3d 844 (Ky. 2023). In this case there were two underlying disciplinary cases, both of which involved violations of SCR 1.30(1.3), 1.30(1.4)(a)(4), 1.30(1.16)(d), and 3.130(8.1)(b). *Id.* at 846-47. Although the underlying conduct in *Miranda* is different, these are the exact rules Judge Curlin has conceded to violating. In *Miranda*, we imposed a 181-day suspension, to be probated for two years, and retroactively applied approximately seven months. *Miranda*, 680 S.W.3d at 848-49.

Therefore, we find the proposed sanction of a one-year suspension of Judge Curlin's license, with ninety days to serve, retroactive to September 12, 2023, the balance to be probated for one year, consistent with our prior cases involving multiple underlying disciplinary cases and multiple rules violations.

9

## IV.    Conclusion

For the aforementioned reasons, we conclude the proposed sanction is appropriate. Therefore, it is hereby ORDERED:

1. Judge Curlin is guilty of four violations of SCR 3.130(8.1)(b); three violations of SCR 3.130(1.4)(a)(3); three violations of SCR 3.130(1.4(a)(4); and one violation each of SCR 3.130(1.3) and 3.130(1.16)(d);

2. Judge David Curlin is hereby suspended from the practice of law in this Commonwealth for one year, with ninety days (90) to be serve retroactive to September 23, 2023. The balance shall be probated for one year on condition that Judge Curlin shall not receive any further disciplinary charges and shall, in cooperation KYLAP, enter into a Monitoring Agreement in regard to his ADHD treatment;

3. If Judge Curlin fails to abide by any of the terms of discipline during the one-year probationary period, upon the KBA's motion, this Court may suspend Judge Curlin for the remainder of the one-year suspension;

4. Pursuant to SCR 3.450, Judge Curlin is directed to pay all costs associated with these disciplinary proceedings.

All sitting. Lambert, C.J.; Bisig, Conley, Goodwine, Nickell, and Thompson, JJ., concur. Keller, J., concurs in result only.

ENTERED: April 24, 2025

_____
CHIEF JUSTICE